DOCS. ENCLOSED:

1- Dft's Repl. with Tab. of Cont. (17 pgs)

2- Defts. Suppl. Decl., EXH. 1 (3 pgs)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/25

1:98-cr-01023-LAK-8
Khalfan Khamis Mohamed

# Defendant's Reply; Table of the Contents

|   |   | Page |
|---|---|---|
|   | Argument | 1 |
| A | Overview of Government's Responsive Letter, Doc. 2246 | 1 |
| 1 | Victim of Abuse | 1 |
| 2 | Medical & Health Circumstances | 2 |
| 3 | Unusually Long Sentence/Sentence Disparity | 2 |
| 4 | Rehabilitation Efforts | 2 |
| 5 | Other Reasons | 2 |
| B | Three Procedural Defects with the... Letter Because of Which the Court should Strike the Letter... | 3 |
| 1 | The Decision Not to Provide Mohamed with Cited Materials That Aren't Accessible to him... | 3 |
| 2 | Reliance on Footnoted Argument | 4 |
| 3 | Decision Not to Counter Mohamed's Evidence-Based Argument with... Acceptable Evidence... | 4 |
| C | Victim of Abuse: Contrary to Gov...; the Necessary Requirement Are met | 6 |
| 1 | Mohamed Suffered Serious Injuries | 6 |
| 2 | Waiting Further Proceedings Will Result into Unduly Delay... | 7 |
| 3 | Misconstruing U.States v. Matta... | 7 |
| 4 | The Gov. Does Not Want to Give Mohamed the Relevant Records; He Requests the Court to Direct the Gov. to Provide the Court with Relevant Records... | 8 |
| D | Medical & Healthy Circumstances; the Gov. Doesn't Dispute the Existence of Mohamed's 9-Listed Physical conditions Nor His Emotional conditions and Their Combined Impacts. | 9 |
| E | Un Usually Long Sentence; The Gov. failed to show there's no unfair... | 10 |
| F | Rehabilitation Efforts: Gov. Failed to Counter Mohamed's showing | 11 |
| G | Mohamed's Prolonged S.C. May Qualify As Contributive ECRs. | 12 |
| H | Family Circumstances... Qualify for Consideration... | 14 |
| I | § 3553 Factors Favor the Granting of the Motion | 14 |
| * | Citing of origin-crimes & PSR Don't show Mohamed Today--Poses Danger. | 14 |
| * | No Evidence Mohamed committed Any Crime Before 1998 | 15 |
| J | The Court Should Grant the C.R. mot. without victims' view | 16 |
| * | Conclusion | 16 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA V. KHALFAN K.H. MOHAMED, 98-CR-1023(LAK)

DEFENDANT'S REPLY IN SUPPORT TO HIS: 2240: MOT. FOR COMPASSIONATE RELEASE & IN RESPONSE TO GOVERNMENT'S: 2246 LETTER OPPOSING THE DEFENDANT'S MOTION

Following defendant's (def., or: Mohamed) filing of his motion for compassionate release (Mot. C.R.) doc. 2240, the government ("gov.") filed its letter (Ltt); doc. 2246 in opposition to the motion, on Dec. 20, 2024. However, Mohamed did not received the Government's (gov's) Ltt until Jan. 2, 2025. See Attached declaration (Dec.), at p.1,2.

In this reply, def. under the "argument" starts with an overview of gov's Ltt, followed by three procedural defects in gov's Ltt because of which Mohamed requests that the Court will strike the Ltt. and the opposion to Mot. C.R, and finally, the def will reply to gov's Ltt.

Argument:

A- Overview of Government's Responsive Letter. Doc. 2246

The Ltt. is 12-page long, comprising of about 20-responsive paragraphs, and 16-footnotes. The Ltt, while purporting to respond to Mohamed's C.R. request, it barely touches six of Mohamed's 11- Extra ordinary and Compelling reasons (ECR's) in five paragraphs. Moreover, the Ltt. cites no attachment or supporting exhibit be it in the shape of administrative records or government official's declaration... The only exception is the Ltt's citing of the Presentence Report (PSR); see doc. 2246, p.1 N.1 a four page long, BOP's "Form 583 Report of Incident", Id. p. 7, and Mohamed's own filed appendix... Consequently, while the gov. opposes Mohamed's motion, apparently in its entirety, gov. presents not a single accepted evidence to counter Mohamed's request for C.R. that's supported by not only relevant case law but the BOP's administrative records, staffs & fellow prisoners' with family members' letters of support, as well as Mohamed's own sworn and verified declaration.

Below, is a summary of gov's response under:

1- Victim of Abuse: The gov. left Mohamed's showing here intact. That's because, while Mohamed relied on the two civil court's proceedings and his sworn declaration (for the 2018 & 2020 Abuses; but only on his sworn declaration for the 2000 and 2009 abuses) the gov. provided nothing to encounter that showing. The gov's attachment, titled "Form 583 Report of Incident" is a

-1-

falsely made document. It contains nothing but a fabricated event. See Suppl. Declaration. p.1, at 3-4. Even if it were an authentic paper, it's not verified; hence cannot be used in counting Mohamed's showing.

2- <u>Medical & Health Circumstances</u>: Here too, while the gov. made some general disputing on whether the conditions listed by Mohamed meets the necessary severity for C.R.; the gov. did not dispute the existence of any of the nine physical conditions listed by Mohamed, nor did the government dispute the impacts of these physical conditions as well as the emotional ones in his daily life.

3- <u>Unusually Long Sentence/Sentence Disparity</u>: The gov. here did dispute Mohamed's argument that three of his codefendants were offered a plea deal and sentenced to much lenient sentence even though their respective involvement in the conspiracy and their history in the group were much deeper and longer than Mohamed's. However, the gov. only made that attempt with relation to the two codefendants: Bary and Al-Nalf. The gov. said not a single word in responding to Mohamed's argument, supported by gov's and court's records that his third co-defendant; Ali Mohamed got a plea deal, sentenced to much shorter prison term even though he was one of the highest figure in the organization and played the most important roles in the conspiracy including the one related to the two embassies bombing. Moreover, the gov. did not dispute Mohamed verified statement that; the gov. did not extend the plea deal offer to him regardless of Mohamed's readyness to such a deal at the time.

4- <u>Rehabilitation Efforts</u>: Here, as well; while the gov; without any evidence, insisted that Mohamed still poses danger to the community, it did nothing to negate Mohamed's rehabilitation that's supported by his own acknowledgment, regret, and remorse regarding his role in the crimes, family's confirmation in that end, his participatin in dozens of institutional and community educational and other programs ..., and positive character reference from prison staff as well as fellow prisoners.

5- <u>Other Reasons</u>: The gov. here briefly touched two of the six ECRs listed. The gov. incorrectly argued the SAMs and solitary confinement as well as family circumstances aren't ECRs; again, without any dispute of the existence of those conditions here.

-2-

## B- Three Procedural Deffects With Government's Responding Letter Because of Which the Court Should Strike the Letter Or Entirely Reject Government's Opposition

Unlike Mohamed, proceeding pro se, thus his papers should be construed liberally, see Triesman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2nd Cir. 2006), the gov. is represented by highely experienced lawyers. Therefore, any difect in relation to violation of the relevant rules should be Necessarily an entintional disregard of those rules and precedents. Because of that, Mohamed respectfully requests that the court will strike down gov's Ltt, or reject it in its entirety. The three intentional difects are as follow:

### 1- The Decision Not to Provide Mohamed With cited materials that Are Not Accessible to Him Otherwise:

On Jan. 2, 2025, Mohamed received gov's Ltt. from the mail. The envelope had three documents: (1) The twelve pages Ltt/response; (2) "Form 583 Report of incident" (4-pages, dated; Aug. 23, 2018), and; (3) the district courts of Montana ruling in U. states v. Matta, Cr-21-22-BLG-SPW (dated March 22, 2024). See Suppl. Decl. at __. However, while the gov. heavily cited the "Presentence Report" (PSR), in its Ltt; see doc. 2246, p.1 N.1 the gov. chose to withhold this key document from Mohamed; it did not provide him the PSR. Moreover, as the gov. should've known; Mohamed has no means to access the PSR. The Lexis Nexis electronic law library doesn't carry the document... Beside the PSR, the gov. also failed to provide Mohamed with some case law that it sided... which also are Not found in the Lexis law library. That includes the Court's decision in U. states v. El-Hage, 98-CR-1023 (LAK) doc. 2236, cited in the gov's Ltt. p. 8 N.10. Even After hours of searching, Mohamed couldn't locate the ruling. See Suppl. Decl. at.1-2.

The gov's decision not to provide Mohamed with these key documents, especially the PSR which repeatedly cited and relied by the gov; is both; highely prejudicial to Mohamed csince he couldn't see what the PSR really says in accordingly then response, and in clear violation of the S.D.N.Y. local rule and the Second Circuit's precedent. The Rule 7-2 of S.D.N.Y states in relevant section:

> In cases involving a pro se litigants, counsel **must**, when serving a memorundum of law... provide the pro se litigants... with copies of cases and other authorities cited theirin that are unpublished or reported exclusively on computerized databases (Emphases added).

See also, Lebron v. Sanders, 557 F.3d 76, 78 (2nd Cir. 2009) ("since 11, 2008, the local rule of "S.D.N.Y." have **required** counsel to provide a pro se litigant with printed copies of decisions cited..." (Emphases added)

-3-

Because the gov. failed to abide to the above cited requirement, the opposition should be striken or entirely rejected.

2- Reliance on the Footnoted Argument: The 12-page long gov's. Ltt. contains 16-footnotes. At least an entire half of gov's argument is placed in those notes. But that's also contrary to the Circuit's precedents. See for example: U. States v. Percoco, 13 F.4th 158, Lexis 27, N.12 (2nd Cir. 2021) ("It is well established in this Circuit that we do not consider argument mentioned only in a footnote to be adequately raised..."); In re Tuskiniwsky, 758 F.3d 179, 184 (2nd Cir. 2014) (stating in a case like this one; when the filer is represented by an experienced attorney; "Issues not sufficiently argued...are considered waived..." and "while the Court may have had authority to address some or all" party's "arguments, in order to avoid manifest injustice..., no reasonable attorney would rely on that mere possibility; U. States v. Greenfield, 831 F.3d 106, 118, N.9 (2nd Cir. 2016) ("Because Greenfield raised this argument only in footnote before the district court, it is..., forfeited).

Now, the gov. only briefly addressed four ECRs in the body of its Ltt: (1) Victim of Abuse; doc. 2246.p.6-7; (2) Medical Circumstances, Id at 7.8; (3) Unusually long sentence/sentence disparity, Id p.8-9; (4) Rehabilitation efforts, Id p.9-10, and: (5) Mohamed's condition of confinment along with his family circumstances, Id p.10. But even these briefly argued ECRs in the body of the gov's Ltt; many of them and the rest of ECRs are briefly talked about in the gov's 16-footnotes. In sum; the gov. heavely dependence on footnotes is contrary to the above cited precedents, therefore, the court should conclude that the gov. has waived its argument and opposition here.

3- Decision Not to counter Mohamed's Evidence-Based Argument with any Acceptable Evidence such as Declarations...: Mohamed's thourough argument is supported by Appendex (200+ pages) that includes administrative records, court-civil proceedings of two cases; Mohamed v. Jones et al & Mohamed v. United States; Mohamed's own sworn declaration,...and over 40-letters of support & character reference from BOP's staff, fellow prisoners, an American civilian friend, and family members... These listed materials are in support of each of Mohamed's 11- ECRs. Nevertheless, the gov. even though it purport to oppose each of those 11-ECRs; it offered not a single counter record or affidavit declaration. In other words the gov. appears to require the court disregard all of Mohamed's showing by a mere and bare gov's opposition.

-A-

But the government's choice here is contrary to this district's rule as well as other relevant rules. The Rule 7.1 (a) (1) through (3) (b) lists the relevant requirement when parties file their motions. The Rule states that when a party files a motion it must file also;

"Supporting affidavits and exhibits... containing information and parts of the records necessary for the decision of the motions...", and "all oppositions and replies with respect to motions must comply with local civil Rule 7.1(a) (2) and (3) above. See S.D.N.Y. Rule 7.1 (a) (1) through (3) (b). Perhaps an analogous situation is when parties file their summary judgment motions and supporting materials; There:

"Nonmovant must do more than simply show there is some metaphysical doubt material facts. To make this showing, the nonmovant should cite specific parts of its own... materials..."; and "lack of affidavit supporting motion for SJ allow[s] court to assume nonmovant's assertion in affidavit was true". See O'Connor's Federal Rules; Civil Trials, 2023, p. 732. (Emphases added, parentheses omitted).

As Mohamed has previously asserted before this court; since at least 2019, he has diligently tried, but failed, to obtain the relevant records related to the physical assaults he suffered in 2018 and 2020, as well as the medical and psychology records... He filed administrative remedies as well as FOIA requests... The BOP declined to provide any records. See his Motion doc. 2240, p.7 & n.2. Hence, his own declaration was all that's left. The Second Circuit has acknowledges prisoner's hardship such as this one. See Tracy v. Freshwater, 623 F.3d 90 (2nd Cir. 2018) ("Personal affidavit of an inmate proceeding pro se will often be granted more than ordinary significance in light of his substantial difficulty in generating record evidence beyond his own affidavit"); Moran v. Astrue, 569 F.3d 108, 113 (2nd Cir. 2009) ("When a claimant appears pro se... we must make a searching investigation of the record to make certain that the claimant's rights have been adequately protected").

Mohamed respectfully argues that because the gov. failed to counter any of Mohamed's verified based argument by submitting a verified records and other forms of evidence such as declarations, the court should treat Mohamed's argument uncontested... Under that requested conclusion, the court should then exercise its discretion to grant Mohamed's motion for C.R.

C- Victim of Abuse: Contrary to Government's Argument: the Necessary Requirements, under the Existing Record, Are Met:

The gov. incorrectly argued that Mohamed fails to meet the requirements here because the two physical abuses of 2018 & 2020... aren't concluded in the two civil proceedings and Mohamed's administrative remedies (A.R) are denied by the BOP. Doc. 2246, p.6. But not completely so. As Mohamed showed in his Mot., doc 2240, p. 4-5; the only definitive BOP/administrative denial came from the Regional Counsel, via the FTCA complaint. Otherwise the BOP's A-R grievance as well as the Internal Affair/OIG; neither responded to Mohamed's complaint. But even if all three departments have certainly denied Mohamed's complaints, such denial wouldn't negate the existence of the alleged abuses... These depts. are not Nutral. Moreover; as it was detailed in the Mot; Doc. 2240, the court's record so far sufficiently establishes the alleged abuses. Id. p. 6-9.

1-Contrary to Government's position; Mohamed sufferred Serious Injuries From the Staff's Malicious Attacks: The gov. for the first time since the assault of 2018 was comitted against Mohamed claims that Mohamed's injuries occurred "when a BOP staff member inadvertenly fell on Mohamed while trying to prevent Mohamed from pulling away from other corrections officers". Doc. 2246, p.7. The gov. here cite Ex. B at 1 (BOP Report of Incident "J". However, the cited document (the one Mohamed Received is 4-pages long, unless if the gov. cites another document) it does not state the quoted statement above. Moreover, as stated earlier; even if the cited document does say so, the document carrys a false and fabricated statement, and is not verified. In any event; the document should not establish legitimate dispute with Mohamed's own declaration, sworn civil complaints and the Court's findings.

Furthermore, the gov., also for the first time ever, claims that Mohameds injury is "minor fracture". Incorrect; Mohamed was diagnosed with an "Acute Fracture". See Mohamed v. Jones et al: 20-cv-02516-RBJ-MDB, doc. 64, at 118. "Acute" injury is a serious one. "Acute": very serious or dangerous, requiring serious attention or action". Merriam-Webster's Advanced Learner's English Dictionary (2008) p. 18. Moreover, Mohamed was forced to remain on wheelchair for over two months. Doc. 2240 p. 6. And to this very day he continue to suffer from excruciating pain on his broke leg; Id p. 14, and other injuries maliciously caused by the BOP staff on Aug. 23, 2018, Id. at. p. 18. (pain on his back, legs, wrists, and Jaws.). In 2020 abuses Mohamed also suffered serious injuries. See doc. 2240, p. 7-8.

-6-

**2- Contrary to Government's Position, waiting on Further Proceeding will result in to unduly Delay and Risk in Mohamed's safety.**

The gov., without any evidence argues that since Mohamed has already waited for several years before filing his mot. for C.R., he cannot argue that further waiting will be unduly delay or result in to risking his life. Doc. 2246, p. 6-7. Previously, Mohamed has exactly argued as such. Doc. 2240, p. 9-10. The gov's above argument lacks merits. That's because, as the gov. well knows, the "victim of Abuse" (which's the first and most important here) was only added last year, 2023. The current sentencing guidlines relevant to mot-for C.R. became effective in Nov. 2024. As gov. further admitted, by May 2024, Mohamed filed his administrative remedy with the warden. Doc. 2246, p. 2. And here he's now. In any event, Mohamed couldn't file his motion much earlier than he did. As for the risk in his safety, this's very serious one: todate the BOP hasn't acknowledged any assault on Mohamed even though the evidence points to the BOP's liability. The lack of such acknowledgement only motivates violant BOP's staff to repeate the abuses... They're free to abuse Mohamed as they wish. Additionally, as Mohamed has shown in his Mot: doc. 2240, p. 21, he's forced to live in constant fears of his life to the extent that he's contemplated ending his own life. Id p. 21. As stated above, the gov. provided no evidence to negate these showings.

The gov's argument in footnote (p. 6, N. 6 & 7) also lacks merits. N. 6: fails because whether the district court allow Bivens Remedy in those claims or not, the mentioned violation has already taken place. That deliberate failure to timely and adequatlely treat Mohamed's injuries that were maliciously caused by the BOP's staff in the first instance, is an ECR by itself. The N. 7 also fails. As Mohamed already argued: doc. 2240, p. 39-40; these violations constitutes an ECRs because its an extraordinary that a person suffers from such injuries and damages, in America, in this 21st. century without any damages remedy!

**3- Misconstruing of U.States v. Matta, cr-21-22-BLG-SPW:** The gov. argued that Matta is distingvishable from Mohamed's case here. That's because Matta filed his motion in the same year of the abuse; the gov. there didn't dispute Matta's account, and Matta was only serving 36-months sentence. Doc. 2246, p. 6-7. Gov's argument has no merits. **First:** The fact that the prisoner there filed his mot. for C.R. in the same year of the abuse, carrus no weight whatsoever. The relevant statute here say nothing of "statute of limitation", and the gov. itself doesn't argue as such. In any event, as stated above, within 6-months of the new guidlines Mohamed initiated his request.

-7-

**Second:** The fact that the gov. disputes Mohamed's claims here while it didn't there, if anything, only shows gov's bitterness and bias toward Mohamed... That goes back even before the criminal trial started. As Mohamed has already shown, and the gov. didn't dispute; the gov. offered plea deal to two and and then third co-defendant; Ali Mohamed, Al-Nalfi, and Barry; doc. 2240, p.23-28 while declined to do so with Mohamed even with full knowledge of Mohamed's readyness. Id. p. 31. Moreover, the gov's dispute and denial here is without any weight. As stated above; the gov. provides no counter evidence against Mohamed's showings. And; **Third:** the fact that Matta was serving 36-months sentence is also irrelevant. The applicable statutes does not differentiate between sentence's length. The fact that Mohamed was sentenced to life + 40 years does not and should not means that the BOP staff can abuse him as they wish, as they actually do. Additionally, Mohamed has shown in his Motion doc. 2240. p. 13, that even absent "victim of Abuse" provision the Courts in this district release prisoners who're originally sentenced to life +, many of whom, unlike Mohamed here, are leaders in their respective criminal groups and organization. Id.

The gov. erroneously argued that; **first:** "Mohamed provides no evidence to support his claims that he was tied naked, tortured, or incurred injuries as a result of an assault by Corrections officers" in 2000. Doc. 2246, p.7. The court should reject gov's attempts; disregarding Mohamed's accounts supported by his sworn declaration. Mohamed's provided dates, places and kind of injuries he suffered from BOP's hand. The gov. not Mohamed, possess medical and other records. The gov. not only failed to provide any medical record that disputes Mohamed's verified accounts but failed to provide any staff's declaration. As it's shown shortly below; the gov. refuses to provide any record that may support Mohamed's allegations. And **Second:** The gov. states that the District Court found that Mohamed was involved in assaulting prison officer in 2000; he covered video camera and grabbed officer's walkie-talkie". Doc. 2246, p.7. True, the court found that in Mohamed's absentia. As previously stated; Mohamed denied that claim which was made by the other prisoner... But even if it was true, and it wasn't, that Mohamed did those two acts; those acts couldn't be justly used justifying several hours long tortures that parmanently left Mohamed's eyes and Nose defective.

**4- The Gov. Does Not Want to Give Mohamed the Relevant Records: He Requests the Court to Direct the Gov. to Provide the court the Relevant Record Including the Cameras of Aug 23, 2018 Events: The**

-8-

District Court in Colorado has ordered the parties to conduct discovery related to the FTCA claims... However, the gov. to this day has virtually provided Mohamed nothing in relation to his production of document requests. See Mohamed v. Jones et al. Id. doc. 197 (Mohamed's mot. to compel discovery). As detailed in his mot. doc. 197; even those document that the gov. said will provide after the Court entered the protective order; the gov. refused to provide them so far over 40-days since the protective order was entered. Since the gov. so far failed to provide Mohamed the key records especially the cameras of the assault, he respectfully ask the court to instruct the gov. to give it all records concerning the events of Aug. 23, 2018, including the video footages... The gov. purposefully, Mohamed believes, both; requested the draconian protective order and refuses to provide documents so to prevent Mohamed from using those relevant records here. It's ironic then for the gov. here to argue that Mohamed failed to provide any evidence that he was tortured in 2000 while actively; on one hand denies any liability of the 2018 and 2020 alleged abuses, and actively prevent Mohamed from accessing any relevant records related to those abuses, on the other!

**D- Medical & Health Circumstances: The Government Does Not Dispute the Existence of Mohamed's Nine Listed Physical conditions Nor His Emotional Conditions and Their combined Impacts:**

The gov's argument here consists of one paragraph and two footnotes. See Doc. 2246, p. 7-8, N. 9&10. But gov. only argued that the listed physical and emotional conditions, regardless of their negative impacts in Mohamed's daily life, do not meet the relevant requirement necessary for C.R. Id. The gov. doesn't, however, in any way dispute Mohamed verified showing that for years he's been suffering from these combined; physical and mental conditions and have tremendously impacted his daily life. Doc. 2240, p. __-20. The gov. furthermore; doesn't dispute that many of his physical conditions (such as the excruciating pain in his leg, vision problem, high blood pressure, constipation, swelling & painful feet...) and all of his emotional conditions including the PTSD related issues are resulted from the BOP's abuses and mistreatments.

The gov's claim that Mohamed "does not allege that any of these conditions requires specialized... care."; is incorrect. Mohamed extensively argued exactly that. See Doc. 2240; p. 14 (broken leg can only be treated after he's released); p. 15 (eye problem, same); p. 16 (blood pressure; same; also) p. 16-7; (constipation) etc. In those areas Mohamed also cited family's readiness to ensure his treatments.

-9-

The gov's cited cases; p.8, N.10, are different from Mohameds. While the prisoners there; El-Hage and Shabazz, are ADX-prisoners like Mohamed, neither of them has suffer staff's comitted abuses and consequently, pushed into dozens of physical and emotional chronic conditions as Mohamed.

E-Unusually Long Sentence/Sentence Disparity: The Government Failed to Reasonably show that There's No unfair Sentence Disparity:

The gov, in order to sustain its position that Mohamed comitted much serious crimes that deserve the life sentence he received, attempted to minimize two of the three codefendants' crimes; Bary and Al-Nalfi. With Bary, the gov. invoked this court's statement that Bary "spread propaganda..., a crime that was not nearly as serious as the crimes of his co-conspirators". Doc:2246.p.8-9. However, that's not all what this court said. As Mohamed had shown; Doc:2240.p.28, the court also correctly said;" a sentence of life imprisonment for... a terrorism conspiracy particularly one that couses death does not require an operational role". That's exactly correct when one see how sentences were decided in this case. As Mohamed argued, Id; there're other codefendants who're like Bary; weren't acused of direct involvement in the bombing, but still received life sentence like Mohamed. Those include El-Hage and Fawwaz. Fawwaz was in U.K. just like Bary, while El-Hage was in the US long before the bombings happened. Moreover, the court's above statement that Bary's role "was not...as serious as the crimes of his co-conspirators", may not necessarily mean that those "co-conspirators" include Mohamed. The case involved tons of co-conspirators... Some of these remained in the group for perhaps decades while at the same time holding leadership roles, training the group's soldiers, advising and meeting its top leaders and ensure their safety...; such as Ali Mohamed and, perhaps to less extent, Al-Nalfi. It's perfectly true that Mohamed's role cannot be compared with Ali Mohamed and others. Additionally; as Mohamed had shown; Bary, similar to Ali Mohamed pleaded guilty and got sentenced for charged in relation to both bombings. Mohamed, however, was charged and convicted of Dar es Salaam bombing alone; without minimizing his crimes. As for Al-Nalfi the fact that he pled guilty for crimes that carried 121-months of imprisonment does not mean that absent plea deal he couldn't be charged and convicted of much serious crimes that carried life sentence. Mohamed has already shown that Ali Mohamed, about whom the gov. refused to say a word, and Bary with Al-Nalfi, per gov's own account were involved in the group for very long time... during which; each held high leadership role. See Doc:2240.p.23-30.

Finally, here, the government's own showing acknowledged that

-10-

Mohamed, unlike others such as Ali Mohamed, did not lie to the law enforcement officials who questioned him about the bombing. It's the gov. itself, that tells the court that; following his arrest, Mohamed was informed of his rights, he waived them and admitted his envolvement in the bombing of the embassy in Dar es Salaam". Doc. 2246, p. 2. That's not what Ali Mohamed did, however. Per the Indictment of March 12, 2001; On sept. 10, 20 Ali Mohamed before this same court room" made false statement to a federal grand jury conducting an investigation of AlQaeda...and Islamic Jihad and the August 1998 bombings in Africa". Id. p. 47-48. Later on, however, and only after the plea deal offer Ali Mohamed, again in this court room, confessed of, among other things, that he had intentionally lied to the grand jury. See the Transcrip of the plea, dated oct. 24, 2000, p. 26-28.

Now, it should be clear then, that the gov's suggestion here that "Mohamed... could have chosen to plea guilty, even without a plea agreement", doc. 2246, p. 9, is both; lacks any merits and contrary to how ordinary business here is conducted. As stated above; Gov. own showing, Mohamed did admit his role and, unlike Ali Mohamed, did not lie. Ali Mohamed lied to the gov. and did not confess until he was offered the plea deal. As Mohamed had shown; doc. 2240, p. 29, Bary too; just about a year before he was offered the plea deal he was aggressively fighting in this court not only to suppress his previously made statements but also for the removal of certain terms that he believed were against his rights in the indictment. But following the plea deal offer, he came forth and only then he admitted his crimes... Once again; per all fair assessments; Mohamed was much "forthright" than both; Ali Mohamed and Bary.

To conclude here; the gov. didn't dispute Mohamed's showing; doc. 2240, p. 31, that even though Mohamed was willing to accept a plea deal and the gov. knew it, yet the gov. was never ready to offer him the deal. It only wished him death... Perhaps one may think, he was of too lower rank for the deal and he had told the gov. all it needed. Under that background; Mohamed had to go to trial since the gov. only wished him the death.

F- Rehabilitation Efforts; the Government Failed to counter Mohamed's Showing:

In this section, Mohamed presented, besides his own sworn, verified statements that expressed his sincere regret and remorse; administrative records and over 40 letters of support and character reference from prison staff, fellow prisoners, American citizen outside friend, and family members.

-11-

See Doc. 2240, p. 33-37. Through his sworn declaration, Mohamed declared that in his quarter century in prison, he only received four incident reports, all of which, but one, were issued either for the purpose to cover up and justify BOP's own crimes against Mohamed or; in retaliation against him. See Doc. 2240, p. 33 & n.6.

Now, while the gov. appears to dispute, without any evidence, Mohamed's showing that he was abused on several occassions by BOP's staff; the gov. does not in any way dispute any of the above listed supporting records. The gov. found only one issue to raise that, per gov view, undermines Mohamed's Rehabilitation. That's; Mohamed, being found he had committed assault in 2000 and 2018; per gov's erroneous view, he refuse "to accept responsibility for them". Doc. 2246, p. 9. As a starting point; contrary to gov's claim, in 2018 Mohamed was not accused nor found guilty by the BOP's disciplinary officer of "committing assault". Mohamed rather, was falsely accused and then found guilty of "Attempted Assault". See gov. Ex. B, p.1. ("Form 583 Report of Incident"). Additionally, as Mohamed stated before through his sworn declaration which the gov failed to properly counter; both of these two incidents reports were necessarily fabricated against Mohamed...Without such fabrications the BOP should've been admitted the crimes against Mohamed that left him with broken nose and fractured eye (in 2000 attack) and broken leg (in 2018 attack).

Further more, as Mohamed has already shown, courts in this district have positively considered prisoners' rehabilitation and granted C.R. motions even in cases where prisoners have had less clean disciplinary records. See Doc. 2240, p. 37. (In U. states v. Ballard, 552 F. Supp. 3d, the court granted mot. for C.R to a prisoner who since 2008 had "21-infractions"). Mohamed, after all, never claimed to be perfect. But the relevant law and Judges never required perfection neither for a C.R. motion to be granted. As one court perfectly put it in this district, "At the very crux of compassionate release is the recognition that "No man is beyond redemption". U. states v. Snype, 683 F. Supp. 351, 366 (S.D.N.Y. 2023) (Emphases added).

G- Contrary to Government's View; Mohamed's Prolonged Solitary Confinement May Qualify as Contributive ECR's:

The gov. next argued that Mohamed's claim that he was subjected to SAMs for 23-years... But the SAMs restrictions on him, gov. said, were warranted... Doc. 2246, p. 10. To start with, Mohamed never said anywhere that he was subject to SAMs "for approximately 23 years", as the gov.

-12-

misleadingly claimed he did. See Doc.2246, p.10. What Mohamed said and still say now is that he was held in solitary confinement for that period of time. That's including the time period from 1999 to Nov. 2015 when he was both; under SAMs as well as under solitary confinement. Doc.2240, p.41. He clearly stated that the SAMs restrictions were lifted in Nov. 2015. Id.

Moreover; Mohamed is not merely argue that his prolonged solitary confinement (S.C.) governed by SAMs and otherwise is by itself an ECR for the purpose of C.R. consideration. Rather; Mohamed's argument here is that that S.C. along with its negative impacts on him... Mohamed in a thorough detail, supported by his sworn declaration presented a summary of his life under S.C., from H-unit to the G.P. within the ADX. He further presented case law and other reliable authority that confirmed the impacts of S.C. with and without SAMs. See Doc. 2240, p. 41-42.

It should be easely noticeable here as else where in gov. Ltr; the gov. did not present any sort of evidence to counter Mohamed's showing. Besides; Mohamed, unlike other prisoners whose cases are cited by the gov; doc.2246, p.10. and whose Mot for C.R were denied; he asks the court to consider his 23 years under S.C. and its impacts along with other ECRs listed in his motion." Where no single factor alone may justify release, the total circumstances may still rise to the level of extra ordinary and compelling reasons for release". U. States V. Snype, 683 F.Supp.3d 351, 364 (S.D.N.Y. 2023).

The gov. also, incorrectly, accused Mohamed of misconduct by "enquiring about recent explosions", and attempting "circumvent" SAMs. Doc 2246, p.10. In the first instance; it's true that Mohamed did ask about the explosions he had heard from the BBC Radio at the time... However; Mohamed's reason and motive was not the one FBI at the time and the gov. now forcefully make it to be; Mohamed's family is big one... He has tens of family members and relative live in Dar es Salaam plus friends and neighbors. For that reason; Mohamed always carefully follows the news and events occurring in Dar es Salaam, Zanzibar, and other parts of the country... Infact; one of his nephews at the time was living not far from the explosions... He was safe, though. Moreover; Mohamed communications; mail at the time, phones, and Email, are full of such inquiries...; when fire accident, flood, draught, ferry accidents...etc happen. Mohamed inquires about well being of his family and others. See Suppl. Decl. at 6. The FBI used the inquiry as a reason to renew SAMs on Mohamed at the time. In the second instance; just as the first one; Mohamed violated no rule or regulation. No infraction were issued.

-13-

H- Family Circumstances: Contrary to Government's Position; The circumstance Here Qualify for court's consideration Along with other ECRs:

The gov. argues that "Mohamed's desire to be released..." is shared among "all inmates". Doc. 2246, p.10. But that's not correct. As Mohamed has shown since 2001; he never has family visit, and doesn't expect one... since his family cannot financially afford. In any case; Mohamed has provided enough support and argument for this court to consider this factor along with the rest. Doc. 2240, p.43.

Mohamed has also recently informed the court that his mother had passed away in Mid-Oct-2024, after Mohamed mailed his motion for the first time. However, as Mohamed informed the Judge in his letter to the court; his release is still appropriate. The family still in the grieving period, and Mother's grave is still fresh. As he had explained in his letter to the court; if the motion is granted he'll as the first thing, visit Mother's grave, of course his twin sister's (who passed away in 2022) too, and perform the appropriate prayer, before planting a flowering plants, as is traditionally done. In addition; Mohamed has also stated that he's, as the youngest male sibling, and second-last among all siblings, his release will be meaningful for every one. That's because several of his older siblings themselves have conditions due to their advancing ages. See doc. 2240, p.43.

I- Contrary to Government's Opposition § 3553 Factors Do Not Require the Denial of the Motion

Mohamed has sufficiently previously shown that the factors favor the granting of this motion. Doc. 2240, p. 46-47. The gov. argued otherwise, but, again, without any credible support evidence.

*- The Government citing of Mohamed's original crimes & the PSR Do Not Show that Mohamed Today, After a Quarter Century, Poses Danger to the Community... The gov. brought forth nothing to show that after such long period of time Mohamed remain the same person... The gov's total reliance on the original crimes and the PSR means it asks the court to disregard all of Mohamed's Rehabilitations efforts... As Mohamed has personally shown in the motion and in his letter to the court, and as members of his own family told the court; Mohamed has expressed sincere remorse for his serious crimes; moreover, he has been positive influence to both: family members and fellow prisoners; he has

-14-

participated in all programs available to him... Yet, the gov. tells the court that today's Mohamed (close to 52-year old) is the same Mohamed of 1998 (25-years old).

Moreover, it's undisputed that the gov. is capable of presenting evidence that shows that Mohamed today poses danger, if the gov. possess such evidence. It doesn't. so, it didn't present any. Mohamed's Mot. contain several case law demonstrate the importance of looking into rehabilitation efforts after the sentencing. See doc. 2240, p. 37

*-The Gov. Presented No Evidence that Mohamed Has Committed Any Crime Before 1998...: The gov., in attempt to suggest that Mohamed is not only dangerous today, but he was involved in conspiracy long before 1998 bombing... In fact, since 1994 when he received military training in Afghanistan. See doc. 2246, p. 11. Yes, in 1994 or so Mohamed did go to Afghanistan for training. However, Mohamed did not go there to join any group or receive any training and then use such training to destroy U.S. or any other embassy. As the gov. knows well, Mohamed went to receive the training so he could then, from Afghanistan go to Bosnia to help his fellow Muslims who were suffering from Serbs committed atrocities... The group that Mohamed received training from wasn't the same group which in 1998 ended up blowing the two embassies. After the training, Mohamed attempted but failed to get his way to Bosnia. He had to come back to his country. Per the March 12, 2001 indictment, Mohamed received the training in 1994, Id. p. 22. But unlike with other codefendants, the indictment doesn't say who trained Mohamed or why he wanted the training. The indictment then states that in March or April 1998, Mohamed was approached for help in a "jihad job". Id. p. 35. From that time onwards to the Dar es Salaam bombing Mohamed is cited several times. But not before. Moreover, it's within the gov.'s recognition and records, that up to early months of 1998 Mohamed was trying to obtain traveling documents so he can go to Europe looking for work and better life. See Suppl. Decl. at 7

Mohamed doesn't say the above statement to deny his crimes. He has committed crimes and paid for them tremendously. However, unlike others like Ali Mohamed and Bary who were in much higher ranks and, at least in the case of Ali Mohamed, not only were officially military trainers, but traveled the world for that purpose. As stated, after the 1994 training Mohamed lived regular life. Gov. never claimed before that Mohamed had prior criminal history. If the court release him, he'll join his family and peacefully remain with them.

15.

## I- The Court Should Grant the C.R. Mot. Without Requesting Victims' View:

The gov. asks for the contrary. It tells the court that "the government will endeavor to contact any victims promptly and advise them that they may be heard on the motion". Doc. 2246, p. 11-12, N.16. Mohamed respectfully request that if the court grant the motion, as he's requesting, the court should not invite victims opinions. That's not out of lack of respect for the victims, but it appears that even though the relevant provision here advises as such, practically, the courts in this district do not usually invite victims' views. Mohamed found no such case here, and the gov. never cited any.

Moreover, the gov. is not qualify to be the mediator between the court and the victims. Leting the gov. communicate the victims on this matter would necessarily means affording the gov. another means to keep Mohamed in prison forever. The gov. will certainly influence and teach the victims on how to oppose Mohamed's release. Therefore, if the court will conclude that the victims should be heard, Mohamed requests that the court come forth with means to reach the victims while at the same time prohibit the gov. from any prior communication with the victims.

The gov., in support to this proposition, claim that 95 victims communicated with the gov. all but one opposing El-Hage's motion. Doc. 2246, p.11. Even if that were true, that shouldn't mean the same is here. Mohamed filed his motion, originally, almost three months ago. It doesn't appear that any victim has come forth. Moreover, one may sincerely question: why a victim would communicate with the gov. when a certain prisoner files motion with the court? Additionally, the gov. failed to explain as to why the about 100 victims of Dar es Salaam bombings have to be heard here but not over 4000 victims of Nairobi and Dar es Salaam bombings back then when the court released Bary and the gov. offered Ali Mohamed the lenient sentence!

## *- Conclusion:

For all reasons stated in mot. Doc. 2240, and in this reply, the court should grant Mohamed's mot, and strike or entirely reject gov's ltt. Doc. 2246.

January 7, 2025
Khalfan Kh. Mohamed
U.S.P. Florence, Box 7000
Florence, CO 81226

Khalfan Kh. Mohamed
S/ Mohammed.

-18-

CERTIFICATE OF SERVICE

I, Khalfan Kh. Mohamed hereby certify that on January 7, 2025 I've mailed my Reply in support of my Mot. for compassionate release, doc. 2240; addressed to:

United States District Court
Chambers of Lewis A. Kaplan, 500 Pearl Street, New York, NY 10007

Dated: January 7, 2025

Khalfan Kh. Mohamed
U.S.P-Florence, Box 7000
Florence, CO 81226

Khalfan Kh. Mohamed
s/ Mohammed

-12-